UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                              Plaintiff,

           -against-                              Index No.:  07 CIV 9234 (CSH)

BANK OF CYPRUS
PUBLIC COMPANY LIMITED,

                              Defendant.


# EXHIBIT 2


DECLARATION OF JOHN FELLAS IN SUPPORT OF BANK OF CYPRUS
PUBLIC COMPANY LIMITED'S MOTION TO DISMISS THE COMPLAINT

## COORDINATION AGREEMENT

This Coordination Agreement (the "Agreement") dated as of September _14_, 2004, by and between the United States of America by its counsel, the United States Attorney for the Southern District of New York (the "United States") on the one hand, and Joseph P. LaSala and Fred S. Zeidman, as Co-Trustees of the AremisSoft Liquidating Trust (the "Liquidating Trust"), on behalf of the Liquidating Trust, on the other hand.

WHEREAS, AremisSoft Corporation ("AremisSoft") is a company incorporated under the laws of the State of Delaware and the debtor in a bankruptcy case under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code")), captioned *In re AremisSoft Corporation,* in the United States District Court for the District of New Jersey, Index No. 02-32621 (JAP) (the "Chapter 11 Case"); and

WHEREAS, after establishing its U.S. holding company and as part of its plan for rapid expansion of it operations, on June 1, 1998, AremisSoft filed a registration statement with the Securities and Exchange Commission ("SEC") on Form S-1 in connection with the initial public offering of its common stock, and consummated such initial public offering on April 22, 1999, resulting in total gross proceeds of $17,650,000 (the "IPO"); and

WHEREAS, AremisSoft's management and controlling shareholders were Lycourgos Kyprianou ("Kyprianou") (Chairman, Chief Executive Officer, and founder), and Roys Poyiadjis ("Poyiadjis") (Co-Chief Executive Officer and President), who together with M.C. Matthews ("Matthews") (a director and President of its Emerging Markets Group) were principally responsible for the affairs of AremisSoft, which had operations and offices in Cyprus, Great Britain, India and the United States; and

WHEREAS, AremisSoft's Emerging Markets Group, headquartered in Cyprus purported to develop business in Eastern Europe, the Middle East, and India, and reported in October 1999 that it had been awarded two contracts with the National Health Insurance Fund of the government of Bulgaria ("NHIF") having a represented aggregate value of approximately $37,500,000 (the "Bulgarian Contracts"); and

WHEREAS, the Emerging Markets Group reported the acquisition of all of the outstanding shares of capital stock of e-nnovations.com, an Indian corporation ("e-nnovations"), on December 29, 1999, for a total purchase price of $14,500,000, the acquisition of all the outstanding shares of capital stock of e-ChaRM Pvt Ltd, an Indian corporation ("e-ChaRM"), on December 5, 2000, for a total purchase price of $10,900,000, and the acquisition of all of the outstanding shares of capital stock of Denon International Ltd. ("Denon"), described as a company organized under the laws of the United Arab Emirates, on December 28, 2000, for a total purchase price of approximately $7,340,000; (collectively the "International Acquisitions"); and

WHEREAS, of the approximately $123,000,000 of revenue reported by AremisSoft for the fiscal year ended December 31, 2000 (the last fiscal year for which audited financial statements were prepared), approximately $90,000,000 was alleged to have derived from its Emerging Markets Group; and

WHEREAS, on May 23, 2001, the SEC issued a formal order of investigation of AremisSoft centering around the Bulgarian Contracts and associated accounting practices; and

WHEREAS, between July 25, 2001 and August 15, 2001, Kyprianou and Michael Tymvios, AremisSoft's Chief Financial Officer, and Matthews, resigned their positions with AremisSoft and its Emerging Markets Group; and

WHEREAS, because, among other things, AremisSoft could not verify financial and operational information from its Emerging Markets Group necessary to complete its financial statements for the six months ended June 30, 2001, AremisSoft announced that it would not file its SEC Form 10-Q for such fiscal quarter, which failure, among other reasons, eventually resulted in the delisting of AremisSoft's common stock from the NASDAQ National Market System on August 30, 2001; and

WHEREAS, on September 28, 2001, AremisSoft disclosed financial and accounting irregularities relating to revenue recognition in AremisSoft's Emerging Markets Group and stated that its International Acquisitions were recorded at values not substantiated by information developed in its internal investigation; and

WHEREAS, following these disclosures, on September 30, 2001 Poyiadjis resigned as co-Chief Executive Officer and director of AremisSoft; and

WHEREAS, on December 4, 2001, AremisSoft filed a Form 8-K disclosing that (i) it was unable to substantiate the approximately $90,000,000 of revenue reported by the Emerging Markets Group for fiscal year ended December 31, 2000, (ii) the purchase price of its International Acquisitions could not be substantiated and were likely overstated, and (iii) its historical financial statements would likely require substantial adjustment to reflect losses in prior periods; and

WHEREAS, class action lawsuits were commenced against AremisSoft, Kyprianou and Poyiadjis in the United States District Court for the District of New

Jersey, alleging, *inter alia,* that the defendants violated § 10(b) under the Securities Exchange Act of 1934 [15 U.S.C. § 78j (b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 10b-5] and additionally that the individual defendants were liable as controlling persons under § 20(a) of that Act; and

WHEREAS, by order dated August 27, 2001, issued by the United States District Court for the District of New Jersey, Hon. Joel A. Pisano, U.S.D.J., the class actions were consolidated under the caption *In re AremisSoft Corporation Securities Litigation,* 01-CV-2486 (the "Securities Class Action") and Schiffrin & Barroway, LLP was appointed Lead Counsel, Lite, DePalma, Greenberg & Rivas, LLC was appointed Liaison Counsel, and Milberg Weiss Bershad Hynes & Lerach, LLP (now known as Milberg Weiss Bershad & Schulman, LLP) and Berger & Montague P.C. were appointed as an Executive Committee for the Class (collectively, "Class Counsel"); and

WHEREAS, on October 4, 2001, the SEC filed a Complaint for Emergency, Preliminary, and Permanent Injunctive Relief in the United States District Court for the Southern District of New York, *U.S. Securities and Exchange Commission v. AremisSoft Corp., et al.,* Civil Action No. 01-CV-8903 against AremisSoft, Poyiadjis, and Kyprianou, alleging that the defendants overstated the value of AremisSoft's contracts, revenues, and recent acquisitions, and that the two former officers engaged in insider trading (the "SEC Action") (attached hereto as Exhibit A); and

WHEREAS, the SEC and the United States traced proceeds from Poyiadjis' insider sales of AremisSoft common stock to bank accounts in the Isle of Man (the "Isle of Man Bank Accounts"), in which funds in the approximate amount of $230,000,000 (U.S.) were held in trust for Olympus Capital Investments, Inc. ("Olympic Capital") and

4

Oracle Capital, Inc. ("Oracle Capital") by trustees John Treavor Baines, Roger Meyer, and Peter Grut (collectively, the "Isle of Man Trustees"), for the benefit of Poyiadjis and others; and

WHEREAS, on October 5, 2001, on the petition of William John Howath Corlett, Q.C., H.M. Attorney General for the Isle of Man, filed on behalf of the United States, His Honor Deemster John Michael Kerruish, Q.C., H.M. Second Deemster, issued a Restraint Order freezing the Isle of Man Bank Accounts, preventing removal of the funds, and such Restraint Order remains in effect (the "CJA Proceedings"); and

WHEREAS, on October 19, 2001, a preliminary injunction was entered in the SEC Action against Poyiadjis, Kyprianou, and Relief Defendants Olympus Capital and Oracle Capital and an order was entered freezing their assets, including the funds held in the Isle of Man Bank Accounts and requiring Poyiadjis and Kyprianou to repatriate those funds to the United States (the "SEC Freeze Order") (attached hereto as Exhibit B); and

WHEREAS, on December 19, 2001, a federal Grand Jury in the Southern District of New York handed up an indictment, *United States of America v. Roys Poyiadjis*, 01-CR-1177 (the "Poyiadjis Criminal Action"), which charges Poyiadjis with, among other things, securities fraud, and contains forfeiture allegations seeking criminal forfeiture of the funds in the Isle of Man Bank Accounts (attached hereto as Exhibit C); and

WHEREAS, on February 11, 2002, the court in the Poyiadjis Criminal Action entered an order restraining the Isle of Man Bank Accounts and directing Poyiadjis to repatriate the funds contained in these accounts (attached hereto as Exhibit D); and

WHEREAS, on March 15, 2002, AremisSoft and the lead plaintiffs in the Securities Class Action (the "Lead Plaintiffs"), on behalf of themselves and all members of the proposed shareholder class, entered into a Memorandum of Understanding with respect to settlement of the Securities Class Action and in connection therewith AremisSoft filed the Chapter 11 Case; and

WHEREAS, on March 15, 2002, Class Counsel filed a First Amended and Consolidated Class Action Complaint in the Class Action on behalf of a proposed class of persons who purchased AremisSoft common stock between April 19, 1999, and July 27, 2001 (the "Class") (attached hereto as Exhibit E); and

WHEREAS, on March 21, 2002, AremisSoft filed its Joint Proposed Plan of Reorganization (the "Plan") and Disclosure Statement which, among other things, (i) cancelled all existing equity interests in AremisSoft; and (ii) created the Liquidating Trust to prosecute certain causes of action of the Class Members, to liquidate certain other assets held by AremisSoft, and to distribute to Class Members their percentage of Net Trust Recoveries in accordance with a Plan of Allocation; and

WHEREAS, by Order dated March 22, 2002, the Federal District Court for the District of New Jersey withdrew the reference of the Chapter 11 Case and transferred the bankruptcy proceedings to the District Court sitting as a bankruptcy court (the "Bankruptcy Court"), consolidating the Securities Class Action and the Chapter 11 Case before Hon. Joel A. Pisano, U.S.D.J.; and

WHEREAS, on March 22, 2002, the United States filed in the United States District Court for the Southern District of New York a civil forfeiture action, *United States of America v. The Contents of Fleming Isle of Man Limited Account Nos.*

6

*2248772101 and 2248820401, and Standard Bank Isle of Man Account Nos. 43016907 and 43016908,* Civil Action No. 02-CV-2319 (the "Civil Forfeiture Action"), seeking forfeiture of the assets held in the Isle of Man Bank Accounts (attached hereto as Exhibit F); and

WHEREAS, on June 3, 2002, a default judgment in favor of the United States of America and against Poyiadjis and others was entered in the Civil Forfeiture Action; and

WHEREAS, on June 25, 2002, the High Court of Justice of the Isle of Man Chancery Division, as Petitioned by Randall Kominsky on behalf of the Class, issued an Order preventing removal of the assets up to $447 million held in the Isle of Man Bank Accounts (the "Liquidating Trust's Restraint Order") (attached hereto as Exhibit G); and

WHEREAS, by Order entered on July 1, 2002, the Bankruptcy Court confirmed the Plan (the "Confirmation Order") (attached hereto as Exhibit H); and

WHEREAS, on July 25, 2002, in accordance with the settlement reached in the SEC Action, a Final Judgment of Permanent Injunction and Other Relief was entered in the SEC Action against AremisSoft, enjoining AremisSoft from violating certain federal securities laws; and

WHEREAS, on July 29, 2002, the Bankruptcy Court entered an order appointing Joseph P. LaSala and Fred S. Zeidman as co-trustees of the Liquidating Trust (the "Liquidating Trustees") (attached hereto as Exhibit I) with duties and responsibilities, among others, to recover assets anywhere in the world for the benefit of the victims of the AremisSoft fraud, in accordance with the liquidating trust agreement (the "Trust Agreement") (attached hereto as Exhibit J), dated July 1, 2002, among AremisSoft, the Lead Class Counsel on behalf of the Class Beneficiaries, and Wells Fargo Delaware Trust

Company, as initial statutory co-trustee, and entered into to implement certain provisions of the Debtor's Plan; and

WHEREAS, on July 31, 2002, the Bankruptcy Court entered orders in the Class Action certifying the Class, approving the Class Action settlement, and entering an Order and Final Judgment in the Class Action (the "Class Action Settlement") (attached hereto as Exhibit K); and

WHEREAS, the Bankruptcy Court also approved the Class Attorney's fees application, which sought, rather than payment of fees in cash, payment by distribution in the following manner: (i) thirty-three and one-third percent (33 1/3%) of the SoftBrands common stock distributed to the Class; (ii) twenty percent (20%) of any amounts recovered as a result of litigation or settlement involving the Isle of Man Bank Accounts (the "Isle of Man Percentage"), and (iii) thirty percent (30%) of all other amounts recovered as a result of litigation or settlement, whether inside or outside the United States, the Bankruptcy Court finding the percentage payments reasonable under the circumstances due to the "high risk of non-payment in this case," the current lack of value of SoftBrands stock, the difficulty of tracing assets ("the absconding defendants scattered the illicit proceeds of their fraud throughout various countries, and likely sheltered those funds in complicated financial vehicles"), and the uncertainty of a recovery in the Isle of Man, as well as the "excellent" and "innovative" manner in which Class Counsel cooperated to bring about a settlement of the Securities Class Action and an expedited confirmation of the Chapter 11 Case (see, *In re AremisSoft Corporation Securities Litigation*, 210 F.R.D. 109, 128-135 (D.N.J. 2002)); and

WHEREAS, on July 31, 2002, a final *in rem* judgment in favor of the United States and against the assets in the Isle of Man Bank Accounts (the "In Rem Judgment") was entered in the Civil Forfeiture Action (attached hereto as Exhibit L); and

WHEREAS, on July 16, 2002, the Attorney General of the Isle of Man presented a petition on behalf of the United States for registration of the In Rem Judgment as an "external confiscation order" pursuant to the Criminal Justice Act of 1990 (Manx Law), which seeks, under principles of comity, the turnover of the assets in the Isle of Man Bank Accounts to the United States and the repatriation of the funds to the United States (the "Registration Proceeding").

WHEREAS, on October 1, 2002, the Liquidating Trustees filed a Statement of Case, Serial No. CA2002/8, in the High Court of Justice of the Isle of Man Chancery Division against Poyiadjis, Kyprianou, and various trusts, banks, and individuals associated with AremisSoft (the "Liquidating Trust's Isle of Man Proceeding") asserting claims of breach of fiduciary duty, abuse of control, breach of employment contracts, common law fraud, conversion, intentional fraud, constructive fraud, and waste among other claims to which Poyiadjis and certain of the other defendants (but not Kyprianou who defaulted) have served Defenses; and

WHEREAS, Parinell, Kerr, Forster, UK ("PKF"), former AremisSoft auditors, settled the Trust's claim against it for $40 million, and Scott E. Bartel and Bartel, Eng, Linn & Schroder settled the Trust's claims against them for a total of $1.65 million; and

WHEREAS, on December 1, 2003, the Liquidating Trust submitted for consideration to the United States a Petition for Remission and/or Mitigation (the "Petition"); and

9

WHEREAS, the United States Attorney for the Southern District of New York advised the Liquidating Trust that in or about March 2004 the United States Deputy Attorney General James B. Comey (the "DAG"), with full and complete authority to bind the United States, approved the Petition as a settlement agreement between the United States and the Liquidating Trust and has authorized this Coordination Agreement as evidence of said settlement; and

WHEREAS, on April 22, 2004 Deemster Kerruish issued a judgment permitting the Liquidating Trustees to become a Noticed Party in the CJA Proceedings;

WHEREAS, the Confirmation Order instructs and empowers the Liquidating Trustees, among other things, to:

- act as Trustee and as the representative of the Trust beneficiaries, the Class Plaintiffs and the Debtor's post-confirmation estate, and to seek formal recognition as such, in relevant foreign proceedings;

- pursue, litigate, settle or waive all Trust Claims, including, without limitation, any counterclaims and defenses, and to be the representative of the Debtor's post-confirmation estate and Class Members in all litigation relating to Trust Claims, and to perform all obligations specified for the Trustee; and

- pursue claims against persons or entities and seek the recovery of assets, including but not limited to proceeds of insider sales of the Debtor's stock, in jurisdictions outside of the United States, including but not limited to the Isle of Man, Cyprus, Monaco and Switzerland; and

WHEREAS, it is the public policy of the United States of America to assist victims of fraud perpetrated within the United States or by a domestic company in the recovery of misappropriated assets; and

WHEREAS, the Liquidating Trust and the United States share common goals in locating and repatriating assets found in foreign jurisdictions, including the assets in the Isle of Man Bank Accounts, for the benefit of the victims of the AremisSoft fraud; and

10

WHEREAS, the Liquidating Trust and the United States have concluded that a coordinated effort to locate and repatriate assets will further the ends of justice and maximize the recovery of assets for the benefit of the victims of the AremisSoft fraud; and

WHEREAS, the Liquidating Trust and the United States have agreed that all funds and assets of every description whatsoever and wherever recovered by the Liquidating Trustees or by the United States will be distributed pursuant to Article V hereof and as a Qualified Settlement Fund in accordance with section 468 of the Internal Revenue Code; and.

WHEREAS, the Parties hereto desire that this Agreement should serve as the governing instrument of their coordinated efforts.

NOW, THEREFORE, in consideration of the premises and agreements contained herein, the Parties agree as follows:

## ARTICLE I

## GENERAL PURPOSES

SECTION 1.1. BROAD COORDINATION. The Parties hereto, consisting of the United States and the Trustees of the AremisSoft Liquidating Trust, by their counsel (collectively the "Parties"), hereby agree to coordinate, and to the extent reasonably appropriate, to cooperate with each other, to the full extent allowed by law, for the purpose of maximizing recovery to the Liquidating Trust for damages suffered by the beneficiaries of the Liquidating Trust (the "Liquidating Trust Beneficiaries"), arising from the fraudulent and other wrongful conduct of Poyiadjis and Kyprianou, together with those other persons and entities who conspired with, or aided and abetted, or

11

otherwise assisted the wrongful conduct of Poyiadjis and Kyprianou (collectively the "Involved Persons"). Types of coordination shall include, but not be limited to, (i) sharing information including documents; (ii) coordinating tactics and strategy both to avoid duplication and to maximize achieving a successful and expeditious recovery in favor of the Liquidating Trust; (iii) taking of all reasonable actions (a) to establish the liability of Poyiadjis and Kyprianou, and the other Involved Persons, and (b) to identify, seize, and recover assets from Poyiadjis, Kyprianou, and the other Involved Persons, to be distributed in accordance with this Agreement; (iv) making of all necessary appearances before any judicial, quasi-judicial, or regulatory body, authority, agency, or tribunal; (v) maximizing the monetization of recovered assets; and (vi) taking other reasonable action, including where necessary the execution and filing of certificates, affidavits, or other legal documentation, to the extent permitted by law, necessary and desirable to effect the foregoing.

SECTION 1.2. **SHARING OF RECOVERIES.** All assets constituting proceeds relating to the AremisSoft fraud and malfeasance, wherever located, whether cash, precious metals, securities, gems, jewelry, securities, debt instruments, interests in partnerships or other business ventures, real property, or personal property of every description whatsoever, whenever recovered by or disgorged to any of the Parties, without any set off, deduction, or claim whatsoever, except as expressly provided for in this Agreement (the "Recoverable Assets"), shall be distributed pursuant to the terms of Article V hereof.

12

**SECTION 1.3  DOCUMENTS AND WITNESSES.** The Parties commit and represent to each other that they will coordinate their efforts, and to the extent reasonably permissible, consider requests to take action or otherwise cooperate to develop information necessary or helpful in locating Recoverable Assets and otherwise achieving shared litigation goals. Upon reasonable request and subject to the limitations set forth below, each Party shall consider making available their personnel and provide such testimony and access to their books, pleadings, exhibits, documents, (including documents obtained from others), investigative materials, transcripts and other records, (collectively the "Relevant Documents") and consider making their witnesses and experts available to the other Parties for interviews, consultations, depositions, and testimony at trial, as shall be reasonably necessary or desirable in connection with the prosecution of the claims of the Liquidating Trustees. Relevant Documents also shall include, but shall not be limited to, all such documents reflecting information concerning (i) the wrongful conduct of Poyiadjis, Kyprianou and the other Involved Persons; (ii) the identity and location of Recoverable Assets, including, without limitation, documents relating to the location, amount, and legal title holders of such Recoverable Assets, including bank account information, and shall also include, but shall not be limited to, all documents, whether or not admissible as evidence in a court of law, related to the Liquidating Trustee's claims against Poyiadjis, Kyprianou, and the other Involved Persons in the Liquidating Trustee's Isle of Man Proceeding, the Securities Class Action, or any other action in which the Liquidating Trustees have or may appear as a party, or related to any proceeding by the United States or SEC that are in the possession of the United States to recover Recoverable Assets for the benefit of the Liquidating Trust. The Parties

13

acknowledge that there may be statutory or pre-existing regulatory prohibitions which bar the United States from providing certain documents or information. The United States will, to the extent consistent with the United States' enforcement obligations, including without limitation, the obligations under 18 U.S.C. § 3500 and the Federal Rules of Criminal Procedure, construe such prohibitions fairly and appropriately.

Relevant witnesses shall include, but shall not be limited to, any persons with information, irrespective of whether such persons could qualify as witnesses in a court of law, concerning (i) the liability of Poyiadjis, Kyprianou and the other Involved Persons, or (ii) the Recoverable Assets.

SECTION 1.4    COORDINATING DISCOVERY.    The Parties agree, consistent with the Litigation Agreement, to consult and coordinate with each other on seeking discovery, whether inside or outside the United States. The Parties shall seek information in a focused manner and shall work with each other to streamline requests as appropriate. Relevant Documents produced to any one party hereto shall be made available to the other party upon reasonable request to the extent otherwise permissible by law. Coordinating discovery efforts shall include, but shall not be limited to:

(a)  Identifying the need for discovery activities including interrogatories, document demands, investigative testimony and depositions;

(b)  Formulating requests for document productions;

(c)  Reviewing document productions;

(d)  Preparing witnesses for depositions and testimony; and

(e)  Working with expert consultants.

SECTION 1.5.  DISCOVERY OUTSIDE THE UNITED STATES.  The United States will consider requests by the Liquidating Trustees to pursue Mutual Legal

14

Assistance Treaties ("MLAT") requests, letters rogatory, and requests for evidence and documents abroad, and shall share any and all fruits of such efforts to the extent permitted by applicable law or treaties that permit the United States government to make such international requests to other nations. The Parties acknowledge that there are often legal prohibitions to the sharing of such information. Upon request by the Liquidating Trustees, the United States shall consider making a request to allow the sharing of the information or Relevant Documents with the Liquidating Trustees, Trustees' counsel and Class Counsel.

SECTION 1.6. APPEALS. In the event a decision of a judicial, quasi-judicial, or regulatory body, authority, agency, or tribunal as it applies to either (i) establishing liability of Poyiadjis, Kyprianou, or other Involved Persons; or (ii) identifying and obtaining the Recoverable Assets, is appealed to a higher authority, whether in the United States, the Isle of Man, or another jurisdiction, the Parties agree to further effectuate the purposes of the Agreement, by coordinating the defense or pursuit of any appeal.

SECTION 1.7. APPLICABLE PRIVILEGES. By sharing information in the manner set forth herein, the Parties hereto do not intend to waive the attorney/client privilege, the deliberative process privilege, the work product privilege or any applicable governmental or other privileges and, in the event any demand is made by third parties for the disclosure of such information from the United States or from the Liquidating Trustees, unless otherwise agreed, the United States and Liquidating Trustees shall (i) give notice of such demand to the other Party hereto; and (ii) withhold disclosure and assert any and all such applicable privileges. To effectuate this provision the Parties, among other things, are entering into a Litigation Agreement.

## ARTICLE II

### THE ISLE OF MAN PROCEEDINGS

SECTION 2.1. BROAD COORDINATION. In addition to the Coordination set forth in Article I, the Parties shall coordinate with each other in the civil prosecution of all matters related to the Isle of Man Bank Accounts including, where reasonably possible not taking any action in any of the pending civil proceedings, whether in the United States, the Isle of Man, or any other jurisdiction, related to the Isle of Man Bank Accounts without first giving notice to the other party. Such notice shall be made a reasonable time in advance of any contemplated action or filing; in any event notice of taking the proposed action or filing shall be deemed sufficient if the requesting party contacts the reviewing party at least three (3) business days in advance of the contemplated action or filing. Such coordination between the Parties shall apply to all actions and proceedings in the Isle of Man, including the civil action by the Liquidating

16

Trustees, the Registration Proceeding by the United States, and any other actions in the Isle of Man, or elsewhere pertaining to the Isle of Man Accounts.

SECTION 2.2.  THE LIQUIDATING TRUSTEE'S ISLE OF MAN PROCEEDING.  The Liquidating Trust shall use all commercially reasonable efforts and use all resources reasonably available to it to assist the United States to prevail in the Registration Proceeding or in any application to seek a new restraint order.  While the Registration Proceeding is actively being prosecuted, and in consideration of this Coordination Agreement, the Liquidating Trustees hereby acknowledge that they will consider abating the trial, should a date be ordered, in the Liquidating Trust's Isle of Man proceeding pending the outcome of the Registration Proceeding, provided that doing so is without prejudice to the preliminary injunction which the Parties hereto agree should remain in full force and effect.  In the event the United States is unsuccessful in the Registration Proceeding (i) in registering the *In Rem* Judgment, (ii) in registering any new *in rem* judgment it may obtain against the Isle of Man Bank Accounts, or (iii) otherwise in obtaining and executing upon an "external confiscation order," the Liquidating Trustees may resume prosecution of the Liquidating Trustees' Isle of Man Proceeding and the United States shall cooperate with the Liquidating Trustees in the prosecution of said action.

SECTION 2.3.  THE LIQUIDATING TRUST'S POSTED UNDERTAKING.  In connection with the Liquidating Trust's Restraint Order, the Liquidating Trust was required by the High Court of Justice of the Isle of Man to post an undertaking in the amount of $1.0 million (U.S.) (the "Undertaking").  The Isle of Man Trustees' (or the IOM Trust Beneficiaries) have applied to the court for an increase in the Undertaking,

17

and may do so again in the future. Upon request, the United States will consider assisting the Liquidating Trustees in opposing such application(s).

SECTION 2.4.   OTHER ACTIONS AND SETTLEMENTS.   The United States will consider taking such other action to obtain, and execute on, a judgment against Poyiadjis, Kyprianou, other Involved Persons (including 'the IOM Trustees), or to facilitate and implement any settlement which the Parties may reach with said persons. The Parties agree that they will not consummate any civil settlement with Poyiadjis, Kyprianou, or other Involved Persons, or the Isle of Man Trustees (i) except on seven (7) business days notice, and (ii) any such settlement shall not bind any other Party to the Agreement or affect any judicial proceeding, order, or restraint obtained by any other Party, without the written consent of such other Party. Nothing in this provision or this Agreement relates to any disposition, or negotiations regarding any disposition, by plea agreement or otherwise, of any criminal matters, provided, however, that any monies paid by Poyiadjis or Kyprianou in connection with a sentence in the Poyiadjis Criminal Action (*U.S. v. Lycourgos Kyprianou, Roys S. Poyiadjis, et al., S1 01 Cr. 1177*) shall, to the extent legally possible and in the absence of any court order or determination to the contrary, be treated as forfeiture subject to the distribution provisions of Article V.

SECTION 2.5.   CONSTRUCTIVE TRUST.   In the event the Liquidating Trustees shall assert a claim to the Isle of Man Bank Accounts or other Recoverable Assets as beneficial owners of the proceeds of Poyiadjis' and Kyprianou's improper activities by way of a constructive trust or otherwise, the United States shall not object to such claim, notwithstanding whether the Liquidating Trustees assert the claim in the Liquidating Trust's Isle of Man proceeding or in any other action. Nothing in this section

18

shall in anyway affect the rights of the Parties *inter se* or the distribution provided for under Article V hereof.

## ARTICLE III

### THE CIVIL FORFEITURE ACTION

SECTION 3.1. NOTICE OF RECOVERY. Within ten (10) business days of all Parties signing this Agreement, the United States shall advise the judge of the District Court for the Southern District of New York exercising jurisdiction over the Civil Forfeiture Action that, the Parties have agreed that the funds shall be disbursed as set forth in Article V below.

## ARTICLE IV

### PURSUIT OF KYPRIANOU
### AND OTHER POYIADJIS ASSETS

SECTION 4.1. BROAD COORDINATION. The Parties agree to coordinate, and to the extent reasonably appropriate, to cooperate with each other, to the full extent allowed by law, in connection with the pursuit and maximum recovery of assets held by, controlled by, or for the benefit of, Kyprianou ("Kyprianou Assets"), Poyiadjis (other than the Poyiadjis assets in the Isle of Man) ("Other Poyiadjis Assets") or assets of the other Involved Persons (the "Involved Person Assets") in such a manner that such assets may be located, frozen, enjoined, recovered, and distributed under the Plan of Distribution for the benefit of the Liquidating Trust Beneficiaries pursuant to the terms of Article V hereto. The Parties acknowledge that this may entail commencing new or additional actions or proceedings in the United States or in other jurisdictions including, but not limited to, Cyprus, Switzerland, and the British Virgin Islands. The United States agrees to the extent reasonably consistent with its own enforcement obligations, to

19

cooperate with the Liquidating Trustees in connection with efforts by the Liquidating Trustees to establish liability of Poyiadjis, Kyprianou, and the other Involved Persons, and to identify, seize, and recover Recoverable Assets located in such other jurisdictions.

SECTION 4.2. DISCOVERY. The Parties commit and represent to each other that they will coordinate to develop information necessary or helpful to locating Kyprianou Assets, Other Poyiadjis Assets, and Involved Person Assets and shall seek both domestic and international discovery in relation to such assets, in the same manner and to the same extent as set forth hereto in Articles I and II.

SECTION 4.3. SEIZING OR FREEZING ASSETS. In the event Kyprianou Assets, Other Poyiadjis Assets, or Involved Person Assets are identified and located, the Parties hereby agree to coordinate with each other in connection with seizing or freezing those assets. Such coordination shall include, but shall not be limited to, (i) if Kyprianou Assets, Other Poyiadjis Assets, or Involved Person Assets are located without the United States,. the Parties, or either of them, filing with the appropriate authority within the jurisdiction in which the Kyprianou Assets, Other Poyiadjis Assets, or Involved Person Assets are located an appropriate notification of the Liquidating Trust Beneficiaries' interest in the assets and an appropriate request for the authority to freeze those assets; (ii) if the Kyprianou Assets, Other Poyiadjis Assets, or Involved Person Assets are located within the United States, the United States and Liquidating Trustees, or either of them with the support of the other Party, shall submit to the appropriate Federal Court a joint request for a temporary restraining order to immediately freeze the assets; and (iii) whether Kyprianou Assets or Other Poyiadjis Assets are located domestically or internationally, within ten days of identifying such assets as constituting the proceeds of

20

the AremisSoft related fraud, the United States shall file an *in rem* action against those assets.

**SECTION 4.4.  RECOVERY AND DISTRIBUTION.**  In the event Kyprianou Assets, Other Poyiadjis Assets, or Involved Person Assets are located, seized, enjoined, and/or frozen, the Parties shall cooperate and coordinate with each other in recovery and/or repatriation of such assets for the benefit of the Liquidating Trust Beneficiaries and distribution in accordance with Article V hereof.

**ARTICLE V**

**DISTRIBUTION OF RECOVERED ASSETS IN
THE ISLE OF MAN BANK ACCOUNTS AND OTHER SOURCES**

**SECTION 5.1.  APPORTIONMENT.**  All or any portion of the funds or other Recoverable Assets recovered by the United States or the Liquidating Trust from the Isle of Man Bank Accounts or any other source of Recoverable Assets, wherever located and whenever recovered, including without limitation accounts frozen or subject to a request by the United States to freeze accounts in Switzerland, the Isle of Guernsey, the Republic of Georgia, or elsewhere, whether accomplished in the Registration Proceeding, the Liquidating Trustees' Isle of Man Proceeding, or by the United States or the Liquidating Trustees in any other proceeding, shall be monetized and then allocated among the United States and the Liquidating Trustees, as follows: (i) two-thirds of such Recoverable Assets shall be apportioned to the United States (the "Government Share"); and (ii) one-third of such assets shall be apportioned to the Liquidating Trust (the "Liquidating Trust Share").  The Parties agree that the Liquidating Trust Share shall be remitted by the payor to the Escrow Agent pursuant to Section 5.4 below, and the Government share shall be deemed forfeited to it pursuant to the relevant civil and criminal forfeiture claims and

21

then distributed to the Liquidating Trust as promptly as possible pursuant to this Article V. The United States agrees to recommend to the Court that any applicable forfeiture amount be paid prior to and, if necessary, in lieu of fines.

SECTION 5.2. PLAN OF ALLOCATION. The United States hereby agrees that following the forfeiture to the United States of the Government Share as provided for herein, the Government Share, less any deduction retained by the United States to offset out-of-pocket expenses actually paid to third-parties during the civil and criminal prosecution and investigation of the matter underlying this Agreement (such as fees of counsel retained in the United Kingdom and travel expenses), shall be remitted to the Liquidating Trustees as a recovery in full and without any set off or deduction, and free of all liens and claims, including for taxes. All such amounts shall be used by the Liquidating Trustees for the benefit of the Liquidating Trust Beneficiaries in accordance with the Plan of Reorganization as it now exists or may hereafter be modified by court order with the limitation provided for in Section 5.3 below. Upon request by the Liquidating Trust, the United States shall provide to the Liquidating Trust an itemized statement of its out-of-pocket expenses, and any dispute concerning the amount or propriety of such out-of-pocket expenses shall be submitted to the United States District Court, Hon. Joel A. Pisano, U.S.D.J., for resolution.

**SECTION 5.3. CLASS ACTION COUNSEL FEE.** The entirety of the Government Share, together with the Liquidating Trust Share, shall be deemed to be a Class Action Recovery, in the nature of a Qualified Settlement Fund pursuant to Internal Revenue Code Section 468 for the benefit of the Liquidating Trust Beneficiaries. All such amounts shall be aggregated for purposes of computing the amount of attorneys fees to be paid to Class Counsel, however, no payment to Class Counsel shall be paid from funds apportioned to the Government Share. In determining the amount of fees payable to Class Counsel, the formula establishing the attorneys fees provided for in the Liquidating Trust Agreement shall be reduced from 20% to 15% of all Recoverable Assets. For purposes of illustration only, if $300 million is recovered in all actions and proceedings, that amount would be apportioned $200 million to the United States, and $100 million to the Liquidating Trust Share. Class Counsel would be entitled to an award of attorney fees based on $300 million, up to 15%, or $45 million in this example, but all of such fee would be paid out of the Liquidating Trust Share of $100 million, and no part of which, under any circumstances, may be paid out of the Government Share. The Government Share may be used by the Liquidating Trustees to pay other expenses of the Liquidating Trust, however, including but not limited to their own fees and the fees and expenses of their counsel, Greenberg Traurig, LLP. The Liquidating Trustees shall provide to the United States an itemized statement of these expenses, including their own fees and the fees and expenses of Greenberg Traurig, LLP, but excluding the fees and expenses paid to Class Counsel. Any dispute concerning the amount or propriety of such expenses shall be submitted to the United States District Court, Hon. Joel A. Pisano, U.S.D.J., for resolution.

**SECTION 5.4.   PAYMENT OF CLASS ACTION COUNSEL FEE BY ESCROW AGENT.** The Liquidating Trust Share shall, in the first instance, be paid or remitted by the Isle of Man Trustees, or other payor from whom recovery is obtained, to an Escrow Agent, to be designated by the Liquidating Trustees, subject to the approval of the Court. Said Escrow Agent shall distribute from the Liquidating Trust Share fees to Class Counsel pursuant to Section 5.3 hereof and pursuant to existing Orders of the United States District Court, District of New Jersey (Hon. Joel A. Pisano). The Escrow Agent shall then distribute the balance of the Liquidating Trust Share in excess of the Class Counsel fee to the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries in accordance with Section 5.2 hereof. The Liquidating Trustees shall enter into an appropriate escrow agreement with the designated Escrow Agent to effectuate this provision.

**SECTION 5.4.   PETITIONS FOR REMISSION AND/OR MITIGATION.** The United States agrees that this Agreement takes the place of and fully satisfies the requirements, if any, of a Petition For Remission, Mitigation, and/or Restoration. When executed by the United States, this Agreement will be deemed to be approval of payment of all forfeited or disgorged assets whenever and from wherever recovered by the United States to the Liquidating Trustees for the Liquidating Trust Beneficiaries. Pending payment to the Liquidating Trustees, the United States shall be the constructive trustee of the Government Share, as a constructive trust for the benefit of the Liquidating Trust Beneficiaries.

24

## ARTICLE VI

## REPRESENTATIONS AND WARRANTIES

**SECTION 6.1. AUTHORITY; NONCONTRAVENTION.** The United States, by its counsel, the United States Attorney for the Southern District of New York, has all requisite power and authority to enter into this Agreement and to perform each and every agreement, obligation, and covenant to be performed by it under this Agreement. The execution and delivery of this Agreement and the performance by the United States of the agreements, obligations, and covenants to be performed by them hereunder have been duly authorized by all necessary action on the part of the United States and the Department of Justice. This Agreement when duly executed and delivered by the United States constitutes the legal, valid, and binding obligation of the United States and its departments and agencies, enforceable in accordance with its terms, except that the availability of the remedy of specific performance or injunction or other forms of equitable relief may be subject to equitable and other defenses.

**SECTION 6.2. AUTHORITY OF LIQUIDATING TRUSTEES.** The Liquidating Trustees have full power and authority to enter into and perform this Agreement, subject to approval by the United States District Court, District of New Jersey (Hon. Joel A. Pisano, U.S.D.J.), which must enter an order approving this Agreement. Upon such court approval, the Liquidating Trustees have all such power and authority necessary to effectuate the performance of this Agreement. Upon execution of this Agreement by the Parties, the Liquidating Trustees, by their counsel, shall promptly submit this Agreement to the Court for approval.

25

**SECTION 6.3. NO FURTHER CONSENTS.** No consent, approval, order, or authorization of, action by or in respect of, or registration, declaration or filing with, any (i) U.S. Federal, state, local, municipal, or foreign government, (ii) governmental, quasi-governmental authority (including any governmental agency, commission, public authority, branch, department, or official, and any court or other tribunal) or body exercising, or entitled to exercise, any governmentally-derived administrative, executive, judicial, legislative, police, regulatory or taxing authority, or (iii) any self-regulatory organization, administrative, or regulatory agency, commission, tribunal, or authority (each, a "Governmental Entity") is required by or with respect to the United States in connection with the execution, delivery, and performance of this Agreement.

## ARTICLE VII

## TERMINATION

**SECTION 7.1. TERMINATION.** With the exceptions of the provisions for termination of this Agreement by a party as set forth herein, this Agreement shall terminate contemporaneously with the Liquidating Trust as set forth in Article VII of the Liquidating Trust Agreement.

# ARTICLE VIII

# MISCELLANEOUS PROVISIONS

**SECTION 8.1. COMMERCIALLY REASONABLE EFFORTS.** Except where otherwise provided in this Agreement, each of the parties hereto shall use their commercially reasonable efforts to take promptly or cause to be taken all actions, and to do promptly or cause to be done, and to assist and cooperate with the other parties in doing, all things necessary, proper and advisable under applicable U.S. Federal, state, local, or foreign law and otherwise to consummate and make effective transactions contemplated by this Agreement.

**SECTION 8.2. AMENDMENT; EXTENSION; WAIVER.** This Agreement may not be amended except by an instrument in writing signed on behalf of all of the Parties to be bound thereby and approved by the United States District Court for the District of New Jersey. A party may (a) extend the time for the performance of any of the agreements, obligations, covenants, or other acts of the other party, (b) waive any inaccuracies in the representations and warranties of the other party contained in this Agreement or in any document delivered pursuant to this Agreement or (c) waive compliance by the other party with any of the agreements, obligations or covenants contained in this Agreement. Any agreement on the part of a party to any such extension or waiver shall be valid only if set forth in an instrument in writing signed on behalf of such party. The failure of any party to this Agreement to assert any of its rights under this Agreement or otherwise shall not constitute a waiver of such rights.

27

**SECTION 8.3. NOTICES.** All notices, requests, claims, demands, and other communications under this Agreement shall be in writing and shall be deemed given if delivered personally, telecopied (which is confirmed) or sent by overnight courier (providing proof of delivery) to the parties at the following addresses (or at such other address for a party as shall be specified by like notice):

    (a)    if to the Liquidating Trustees, to:

> Mr. Joseph P. LaSala
> McElroy, Deutsch, Mulvaney & Carpenter
> 1300 Mount Kemble Avenue
> Morristown, New Jersey 07962-2075

> Mr. Fred S. Zeidman
> Woodrock & Co.
> 4265 San Felipe Street, Suite 600
> Houston, Texas 77027

> with a copy (which shall not constitute notice pursuant to this Section 8.4) to:

> Greenberg Traurig, LLP
> The MetLife Building
> 200 Park Avenue
> New York, New York 10166
> Fax No. : (212) 801-6400
> Attention: Hal M. Hirsch, Esq.
> hirschh@gtlaw.com

> if to the United States to:

> U.S. Department of Justice
> U.S. Attorney's Office
> Southern District of New York
> One St. Andrew's Plaza
> New York, New York 10007

> Attn: Kevin R. Puvalowski, Esq.

> with a copy (which shall not constitute notice pursuant to this Section 8.4) to:

> U.S. Department of Justice
> U.S. Attorney's Office

Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Attn: Raymond J. Lohier, Esq.

**SECTION 8.4. INTERPRETATION.** When a reference is made in this Agreement to an Article, Section or Exhibit, such reference shall be to an Article or Section of, or an Exhibit to, this Agreement unless otherwise indicated. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation." The words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement. The words "and" and "or" shall be interpreted broadly to have the most inclusive meaning, regardless of any conjunctive or disjunctive tense. All terms defined in this Agreement shall have the defined meanings when used in any certificate or other document made or delivered pursuant hereto unless otherwise defined therein. The definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms and to the masculine as well as to the feminine and neuter genders of such term. Any agreement, instrument or statute defined or referred to herein or in any agreement or instrument that is referred to herein means, in the case of any agreement or instrument, such agreement or instrument as from time to time amended, modified or supplemented, including by waiver or consent and, in the case of statutes, such statutes as in effect on the date of this Agreement. References to a person are also to its permitted successors and assigns. The parties have participated jointly in the negotiation and drafting of this

29

Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement. Any reference to any Federal, state, local or foreign statute or law shall be deemed to also refer to any amendments thereto and all rules and regulations promulgated thereunder, unless the context requires otherwise.

SECTION 8.5. COUNTERPARTS. This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties. A facsimile copy of a signature page shall be deemed to be an original signature page.

SECTION 8.6. ENTIRE AGREEMENT; NO THIRD-PARTY BENEFICIARIES. This Agreement (including the documents and instruments referred to herein and the Exhibits attached hereto) (a) constitute the entire agreement, and supersede all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter of this Agreement and (b) is not intended to confer upon any person other than the Parties any rights or remedies.

SECTION 8.7. ASSIGNMENT. Neither this Agreement nor any of the rights, interests or obligations under this Agreement shall be assigned, in whole or in part, by operation of law or otherwise by either of the parties hereto without the prior written consent of the other party. Any assignment in violation of the preceding sentence shall be void. Subject to the preceding two sentences, this Agreement will be binding upon,

inure to the benefit of, and be enforceable by, the Parties and their respective successors and assigns.

SECTION 8.8.  GOVERNING LAW.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New Jersey, giving full effect to its rules of conflicts of laws, as determined by the Honorable Joel A. Pisano, U.S.D.J. The Parties acknowledge that all proceedings in the Poyiadjis Criminal Action and the Civil Forfeiture Action will proceed in accordance with the applicable law where those actions are pending.

SECTION 8.9.  CONSENT TO JURISDICTION.  Each of the Parties hereto consents and agrees for the purposes of interpreting this Agreement and/or for the purposes of settling any disputes between the Parties hereto, that the United States District Court, before Hon. Joel A. Pisano, U.S.D.J., which supervises the AremisSoft bankruptcy, shall retain sole and exclusive jurisdiction, and each party agrees that it will not attempt to deny or defeat such jurisdiction by motion or other request for leave from any such court.  The Parties agree to submit all disputes regarding the performance of the Agreement to said Court for resolution.

SECTION 8.10.  SEVERABILITY.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect.  Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as

31

possible to the fullest extent permitted by applicable law in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the extent possible.

SECTION 8.11. ENFORCEMENT.  The Parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached.  It is accordingly agreed that the Parties shall be entitled to an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement, this being in addition to any other remedy to which they are entitled at law or in equity.

**SECTION 8.13. EXHIBITS** The Exhibits attached to this Agreement are hereby made a part of this Agreement.

AREMISSOFT LIQUIDATING TRUST

By: _____
Joseph P. LaSala, Liquidating Trustee

By: _____
Fred S. Zeidman, Liquidating Trustee


GREENBERG TRAURIG, LLP
Attorneys for the AremisSoft Liquidating
Trust

By: _____
Hal M. Hirsch


UNITED STATES DEPARTMENT OF
JUSTICE


By: _____


Consented to:

Schiffrin & Barroway, LLP,
Class Action Lead Counsel


By: _____

**SECTION 8.13.   EXHIBITS**   The Exhibits attached to this Agreement are hereby made a part of this Agreement.

AREMISSOFT LIQUIDATING TRUST

By:_____
    Joseph P. LaSala, Liquidating Trustee

By:_____
    Fred S. Zeidman, Liquidating Trustee

GREENBERG TRAURIG, LLP
Attorneys for the AremisSoft Liquidating Trust

By:_____
    Hal M. Hirsch

UNITED STATES DEPARTMENT OF
JUSTICE

By:_____

Consented to:

Schiffrin & Barroway, LLP,
Class Action Lead Counsel

By: _____

**SECTION 8.13.   EXHIBITS.**  The Exhibits attached to this Agreement are hereby made a part of this Agreement.

AREMISSOFT LIQUIDATING TRUST

By:_____
　Joseph P. LaSala, Liquidating Trustee


By:_____
　　Fred S. Zeidman, Liquidating Trustee


GREENBERG TRAURIG, LLP
Attorneys for the AremisSoft Liquidating Trust

By:_____
　Hal M. Hirsch


UNITED STATES DEPARTMENT OF
JUSTICE


By:_____


Consented to:

Schiffrin & Barroway, LLP,
Class Action Lead Counsel


By: _____


33

**SECTION 8.13. EXHIBITS.** The Exhibits attached to this Agreement are hereby made a part of this Agreement.

AREMISSOFT LIQUIDATING TRUST

By:_____
    Joseph P. LaSala, Liquidating Trustee

By:_____
    Fred S. Zeidman, Liquidating Trustee

GREENBERG TRAURIG, LLP
Attorneys for the AremisSoft Liquidating Trust

By:_____
    Hal M. Hirsch

UNITED STATES DEPARTMENT OF
JUSTICE

By:_____
    David N. Kelley
    United States Attorney
    for the Southern District of New York

Consented to:

Schiffrin & Barroway, LLP,
Class Action Lead Counsel

By: _____

33

**SECTION 8.13.   EXHIBITS**   The Exhibits attached to this Agreement are hereby made a part of this Agreement.

AREMISSOFT LIQUIDATING TRUST

By:_____
    Joseph P. LaSala, Liquidating Trustee


By:_____
    Fred S. Zeidman, Liquidating Trustee



GREENBERG TRAURIG, LLP
Attorneys for the AremisSoft Liquidating Trust


By:_____
    Hal M. Hirsch



UNITED STATES DEPARTMENT OF
JUSTICE


By:_____



Consented to:


Schiffrin & Barroway, LLP,
Class Action Lead Counsel


By: _____

    STUART L. BERMAN

Milberg Weiss Bershad & Schulman, LLP,
Executive Committee for the Class Action

By: _____

**Table of Contents**

Page

ARTICLE I GENERAL PURPOSES ..................................................... 11

    SECTION 1.1. BROAD COORDINATION ......................................... 11

    SECTION 1.2. SHARING OF RECOVERIES .................................... 12

    SECTION 1.3 DOCUMENTS AND WITNESSES ............................... 13

    SECTION 1.4 COORDINATING DISCOVERY .................................. 14

    SECTION 1.5. DISCOVERY OUTSIDE THE UNITED STATES ............. 14

    SECTION 1.6. APPEALS ............................................................ 15

    SECTION 1.7. APPLICABLE PRIVILEGES ....................................... 16

ARTICLE II THE ISLE OF MAN PROCEEDINGS ................................. 16

    SECTION 2.1. BROAD COORDINATION ......................................... 16

    SECTION 2.2. THE LIQUIDATING TRUSTEE'S ISLE OF MAN
              PROCEEDING ........................................................ 17

    SECTION 2.3. THE LIQUIDATING TRUST'S POSTED UNDERTAKING ... 17

    SECTION 2.4. OTHER ACTIONS AND SETTLEMENTS ....................... 18

    SECTION 2.5. CONSTRUCTIVE TRUST .......................................... 18

ARTICLE III THE CIVIL FORFEITURE ACTION .................................. 19

    SECTION 3.1. NOTICE OF RECOVERY .......................................... 19

ARTICLE IV PURSUIT OF KYPRIANOU AND OTHER POYIADJIS
           ASSETS ........................................................................ 19

    SECTION 4.1. BROAD COORDINATION ......................................... 19

    SECTION 4.2. DISCOVERY ......................................................... 20

    SECTION 4.3. SEIZING OR FREEZING ASSETS ............................. 20

    SECTION 4.4. RECOVERY AND DISTRIBUTION ............................. 21

i

ARTICLE V  DISTRIBUTION OF RECOVERED ASSETS IN THE ISLE OF
      MAN BANK ACCOUNTS AND OTHER SOURCES ..........................21

    SECTION 5.1.  APPORTIONMENT....................................................21

    SECTION 5.2.  PLAN OF ALLOCATION ...........................................22

    SECTION 5.3.  CLASS ACTION COUNSEL FEE .............................23

    SECTION 5.4.  PAYMENT OF CLASS ACTION COUNSEL FEE BY
              ESCROW AGENT .......................................................24

    SECTION 5.5.  PETITIONS FOR REMISSION AND/OR MITIGATION.........24

ARTICLE VI  REPRESENTATIONS AND WARRANTIES ...........................................25

    SECTION 6.1.  AUTHORITY; NONCONTRAVENTION .................................25

    SECTION 6.2.  AUTHORITY OF LIQUIDATING TRUSTEES ........................25

    SECTION 6.3.  NO FURTHER CONSENTS .......................................................26

ARTICLE VII  TERMINATION ..........................................................................................26

    SECTION 7.1.  TERMINATION ........................................................................26

ARTICLE VIII  MISCELLANEOUS PROVISIONS ..........................................................27

    SECTION 8.1.  COMMERCIALLY REASONABLE EFFORTS.......................27

    SECTION 8.2.  AMENDMENT; EXTENSION; WAIVER................................27

    SECTION 8.3.  NOTICES...................................................................................28

    SECTION 8.4.  INTERPRETATION..................................................................29

    SECTION 8.5.  COUNTERPARTS ...................................................................30

    SECTION 8.6.  ENTIRE AGREEMENT;
              NO THIRD-PARTY BENEFICIARIES....................................30

    SECTION 8.7.  ASSIGNMENT.........................................................................30

    SECTION 8.8.  GOVERNING LAW...................................................................31

    SECTION 8.9.  CONSENT TO JURISDICTION................................................31

    SECTION 8.10.  SEVERABILITY ....................................................................31

SECTION 8.11.  ENFORCEMENT ..............................................................................32

SECTION 8.13.  EXHIBITS ...................................................................................33