UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

-against-

Index No.:  07 CIV 9234 (CSH)

BANK OF CYPRUS
PUBLIC COMPANY LIMITED,

Defendant.

# EXHIBIT 9

DECLARATION OF JOHN FELLAS IN SUPPORT OF BANK OF CYPRUS
PUBLIC COMPANY LIMITED'S MOTION TO DISMISS THE COMPLAINT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH P. LASALA and FRED S.
ZEIDMAN, as CO-TRUSTEES OF THE
AREMISSOFT CORPORATION
LIQUIDATING TRUST,

                                  Plaintiffs.

                 -against-

BANK OF CYPRUS PUBLIC COMPANY
LIMITED,

                                Defendant.

Index No.:  NO. 06 CIV 6673 (CSH)

**DECLARATION OF DEMETRIOS
(DEMETRAKIS) STYLIANIDES**

———————

Nicosia, Cyprus.

        Demetrios (Demetrakis) Stylianides, of Nicosia, Cyprus, pursuant to

28 U.S.C. § 1746, declares as follows:

1.      I am now retired.  I am a former Judge and a former President of the

Supreme Court of the Republic of Cyprus.

2.      I am a graduate of the Middle Temple, London and was called to the

English Bar on 26.1.1950, thus becoming a Barrister-at-Law.[1]  I enrolled as an

advocate in Cyprus in March 1950.  I began my legal career in 1950 as a lawyer,

in private practice, in Paphos, Cyprus.  In 1966, I was appointed a District Judge

in Nicosia.  I served in this position until 1971 when I was promoted to the

position of President of the District Court of Nicosia.  In 1981, I was appointed by

---

[1] The dates in this Declaration are in the European style (day, month, year).

1

the President of the Republic to the Supreme Court of Cyprus, the highest court of Cyprus. I served as a Member of the Supreme Court from 1981 – 1994. In 1994, I was appointed by the President of the Republic to be the President of the Cyprus Supreme Court and I served in this capacity until I retired from the bench during 1995. During my judicial service, I exercised all the powers and jurisdictions of the post I held as a first instance Judge for fifteen years and as an appellate Judge for fourteen years, including my service as President of the Supreme Court.

3.    Since 1996, I have been acting as a legal adviser to the Government of the Republic of Cyprus and to other persons. I have participated in the drafting of new laws on a variety of topics. In addition, I acted as the Chairman of the Committee for the Study of the Accession of the Republic of Cyprus to the European Union and the harmonization with European Law of the Constitution of the Republic.

4.    I am familiar with the rules governing the jurisdiction of the Courts of the Republic of Cyprus and with the laws applicable in Cyprus. This includes, inter alia, jurisdiction, procedural rules, and the various branches of substantive law (including local law and bi-lateral and international treaties and conventions).

2

5.      I make this Declaration based on my personal knowledge and in support the Motion of the Bank of Cyprus Public Company Limited (the "Bank") to Dismiss the Amended Complaint.

6.      Based on my experience as a lawyer and a former judge, I believe that I am fully competent to discuss the topics relating to Cyprus law that are in issue in this action including issues related to the Cyprus judicial system and matters of substantive Cyprus law.

7.      In connection with the preparation of this Declaration, I have reviewed the Amended Complaint filed by the Trustees against the Bank of Cyprus in the District Court for the Southern District of New York (the "New York Action").

8.      The purpose of this Declaration is to describe the Cyprus judicial system, the Cyprus law applicable to the claims set forth in the Amended Complaint and to analyze those claims as a matter of Cyprus substantive law.  This Declaration will further describe certain aspects of the regulatory regime to which the Bank of Cyprus is subject in Cyprus (such regime including the Cyprus Banking Law 1997, as amended).  Central to the relevant regime of regulation and supervision to which the Bank of Cyprus is subject in Cyprus is the Central Bank of the Republic.

3

9.     This Declaration will begin by describing three lawsuits that have been filed in Cyprus and before the District Court of Nicosia by Joseph P. LaSala and Fred S. Zeidman, as Co-Trustees of the AremisSoft Corporation Liquidating Trust — the same Trustees that commenced the New York Action.  Because filings in Cyprus are generally a matter of public record, I have been able to review the Trustees' submissions and other filings in the above actions, namely the three lawsuits filed by the plaintiffs (the Co-Trustees) in Cyprus and pending before the Courts of the Republic of Cyprus.

**I.     The Trustees' Three Lawsuits In Cyprus**

10.     The Trustees have instituted three actions before the District Court of Nicosia, Cyprus.

11.     In these actions the Trustees are represented by Mr.Alecos Markides, a prominent lawyer and a former Attorney-General of the Republic of Cyprus.  Mr. A. Markides has been acting for plaintiffs and been involved in the three lawsuits from their inception.

12.     I will now proceed to describe briefly the Trustees' actions instituted in Cyprus, which I will call **First Action**, **Second Action** and **Third Action** respectively.

4

13.    **FIRST ACTION:**

**LaSala and Zeidman, as Co-Trustees etc  v. Kyprianou, et al.**, **Action No. 5581/05 before the District Court of Nicosia**.

This case was filed **in July 2005.**  In this case the Trustees have sued 12 defendants, identified as follows:

1. LYCOURGOS KYPRIANOU of Strovolos, Nicosia District.

2. PAVLOS MELETIOU of Engomi

3. KING MAZAX LINES LIMITED, 123, Strovolos Avenue, Evie Building, Strovolos, Nicosia District.

4. ERMIONI KYPRIANOU, Andis Tseriotis, Tseri.

5. SEMARK CONSULTANCY SERVICES LTD., 30 Egyptou Str. Larnaka.

6. GLOBAL CONSOLIDATOR LTD., 123, Strovolos Avenue, Evie Building, Strovolos.

7. L.K. GLOBAL (HOLDINGS) N.V., c/o ABN – AMRO Trust NV Petermaai, Curacao, Netherlands Antilles.

8. AREMIS HOLDINGS LIMITED, incorporated in the British Virgin Islands, with address, c/o FGC Corporate Services Ltd, 125 Main Street, Road Town, Tortola, and operating and/or carrying out business in Cyprus, 123 Strovolos Avenue, EVIE Building, Strovolos, Nicosia District.

5

9. AREMIS TECHNOLOGY VENTURES LIMITED, incorporated in
the British Virgin Islands, with address, c/o FGC Corporate
Services Ltd, 125 Main Street, Road Town, Tortola, and
operating and/or carrying out business in Cyprus, 123 Strovolos
Avenue, EVIE Building, Strovolos, Nicosia District.

10. SINCOCK HOLDINGS CORPORATION, incorporated in the
British Virgin Islands, with address at Vanterpool Plaza,
Wickharms Cay 1, Road Town, Tortola, British Virgin Islands
and operating and/or carrying out business in Cyprus, 123
Strovolos Avenue, EVIE Building, Strovolos, Nicosia District.

11. SOUTHWOOD MANAGEMENT LIMITED, Mill Mall, Suite 6,
Wickharms Cay 1, Road Town, Tortola, British Virgin Islands.

12. PALANTINE ASSET MANAGEMENT LTD, Vanterpool Plaza,
2nd Floor, Wickharms Cay 1, Road Town, Tortola, British Virgin
Islands.

Six of the persons or entities described are based in Cyprus (1-6 above).

An additional three are alleged by the Trustees to have operations in Cyprus (8,
9 and 10 above).

Five of the entities are alleged to be British Virgin Islands Corporations (8-12)

One is alleged to be a Netherlands Antilles Corporation (7).


14.    According to the Writ of Summons filed by the Trustees in Cyprus in the
**FIRST ACTION**, the Trustees seek $500 million in damages based on the

alleged fraud of these defendants in, among other things, seeking to inflate the value of AremisSoft Corporation.

The causes of action set out in the Writ of Summons are, in brief, the following:

(a)   Fraud and/or fraudulent actions on the part of defendants.

(b)   Conspiracy and/or conspiracies between the defendants and between defendants and other persons not parties to the action.

(c)   Breaches of fiduciary duty on behalf of defendant 1 with the assistance and active participation of the other defendants.

(d)   Breach and/or breaches of the contract of employment of defendant 1 by AremisSoft.

(e)   Unlawful misappropriation of funds on the part of defendants.

(f)   Unlawful activities on the part of defendant 1, resulting in the unjust enrichment of defendant 1.

(g)   Breaches of statutory duty imposed by the Laws of the United States concerning shares and/or securities and/or the Securities Market.

In consequence of the above alleged breaches and/or violations of the Law, plaintiffs, in addition to damages of over 500.000.000 U.S. Dollars, seek various declarations to the effect that defendants have become trustees in favour of plaintiffs, that defendants are under an obligation to pay to plaintiffs the above amounts, that plaintiffs are entitled to trace any amounts which have been obtained by defendants by unlawful and unfair means and that all such amounts

7

– wherever they may be – are subject to an implied and/or constructive trust (in favour of plaintiffs).

15.     In this Action (namely Action No.5581/05), theTrustees have obtained a very drastic freezing order against defendants, which as of the time of signing the present Declaration remains in full force and effect.  This order has been served, inter alia, on the Bank of Cyprus which thus has notice of the provisions of the said freezing order, dated 21.7.2005.   The said freezing order covers, inter alia, defendants' bank accounts, immovable property, all forms of tangible property, shares and stocks, etc.

16.     I understand that this case is still pending before the District Court of Nicosia and also before the Supreme Court of Cyprus. It is pending before the latter because defendants have filed an appeal against the freezing order described hereinabove.  To the best of my knowledge, the Supreme Court has not yet delivered its judgment in respect of defendants' appeal.   I wish to emphasize that the First Action is still pending, on its merits, before the District Court of Nicosia.

17.  **SECOND ACTION**

**LaSala and Zeidman, as Co-Trustees etc  v. LKK Properties & Investments, Ltd, <u>Action No. 273/06 before the District Court of Nicosia.</u>**

In this Action too (namely Action No.273/06), which was filed in January 2006, theTrustees have obtained a freezing order against defendants, which remains in full force and effect.  This order has been served, inter alia, on the Bank of Cyprus which thus has notice of the provisions of the said freezing order, dated 12.1.2006.  The said freezing order refers, inter alia, to a property under the alleged control of defendants, which is located in London.

18.  **THIRD ACTION**

**LaSala and Zeidman, as Co-Trustees etc  v. Bank of Cyprus Public Company Ltd., et al., <u>Action No. 9200/2005 before the District Court of Nicosia.</u>**

In this Action (namely Action No.9200/2005), which was filed in December 2005, plaintiffs claim not damages or any other substantive relief, but rather discovery of documents, information, etc, on the basis of various alleged principles of the Law of Evidence.  To my knowledge and experience, an action seeking only discovery of documents and information, but no substantive relief, is an unusual one for Cyprus Courts.  This Action is directed against the four largest Commercial Banks of Cyprus, including (as defendant 1) the Bank of Cyprus.  At the same time, plaintiffs filed an application seeking – in terms of interim relief –

9

essentially the same orders and remedies as the ones set out in their main Action (namely Action No.9200/2005). The District Court of Nicosia heard extensive argument on plaintiffs' interim application and rejected same, on various procedural and legal grounds. The ruling of the Court was issued on 31.8.2006 and plaintiffs have instituted an appeal before the Supreme Court of Cyprus against the said ruling. This appeal is still pending before the Supreme Court (which is Cyprus' appellate court of last resort).

## II.    **The Cyprus Judicial System and the Law of the Republic of Cyprus**

19.    **Judicial System**:

The Republic of Cyprus was established in 1960, when Cyprus became independent. Prior to 1960, Cyprus was a British Colony. The Republic of Cyprus is a member of the United Nations, of the British Commonwealth Nations, of the Council of Europe and of the European Union (since 1.5.2004). In Cyprus, there is a fully independent Judiciary. There is observed the principle of separation of powers, with the Judiciary being totally independent from the other branches of Government. Related to this principle is the guarantee that any party is entitled to have his or her matter heard by an independent and impartial court. The Constitution of Cyprus fully protects human rights and fundamental freedoms, which are set out in numerous Articles of the Constitution. In Cyprus,

the European Convention on Human Rights and Fundamental Freedoms is observed as a matter of superior municipal law.

20.  There are two tiers of courts in the Cyprus legal system.  The First Instance Courts for civil cases are the District Courts.  For each administrative district there is a District composed of one or more Presidents, Senior District Judges and District Judges, as decided by the Supreme Court.  The competence of each level of Judges is determined by the amount in controversy.  Cases seeking more than £250.000 are within the jurisdiction of a President.  The trial judge determines all issues of law and fact.  The second tier Court, or appellate Court, is the Supreme Court of Cyprus composed of thirteen members, including its President.  An appellate division of the Supreme Court in civil matters consists of three judges (except in special cases where a case, because of its importance, may be heard by an enlarged Bench).  Every judgment of a District Court exercising civil jurisdiction is subject to appeal to the Supreme Court.  In civil and criminal appeals the Judges of the Supreme Court sit in panels of not less than three.  The scope of an appeal to the Supreme Court is set out  in section 25(3) of the Courts of Justice Law 1960 (Law 14/60, as amended).

Also, the Republic of Cyprus, being a member of the Council of Europe and of the European Union, is subject to the jurisdiction of the European Court of Human Rights and of the European Court of Justice.

11

21.  The claims set out in the Amended Complaint – if filed before a Cyprus Court – would be listed before a President of the District Court.  If there are specific reasons that a case should be assigned to a particular judge who has already presided over a related matter, that assignment may be requested by either party.  A letter may be addressed to the Administrative President of the District Court (before which the case is pending) and a request is put before him, enumerating the reasons why a particular case should be heard before a specific Judge.  Such requests – if supported by adequate grounds – are normally granted.  Familiarity of the Judge with the subject matter (because of his having presided over a similar case) is a ground which is normally acknowledged to be reasonable and adequate.  In Cyprus – I would like to mention – there is an appeal from judgments of the District Courts to the Supreme Court of Cyprus.  I repeat that the Republic of Cyprus, being a member of the Council of Europe and of the European Union, is subject to the jurisdiction of the European Court of Human Rights and of the European Court of Justice and thus further review, in a proper case, may be available before those courts.

22.     The Law of the Republic of Cyprus (with regard to the matters in dispute) is, broadly speaking, based on the common law and principles of equity, as applied in common law jurisdictions (principally England) (subject of course to what is stated below in paragraphs 23 and 24).  In greater detail, the position in Cyprus can be set out as follows:

12

23.   **Substantive Law**:

The Constitution is the supreme law of the Republic and has superior force to any other law.  Apart from the Constitution, the following laws are applicable in the Republic of Cyprus (see s.29 of The Courts of Justice Law of 1960 (Law 14/60, as amended)):

(a)   The laws made under the Constitution.  This principally refers to legislation enacted following 1960.

(b)   The laws saved under article 188 of the Constitution subject to the conditions provided therein, save in so far as other provision has been or shall be made by a law made or becoming applicable under the Constitution.  This provision preserves certain colonial legislation dating from before independence;

(c)   The common law and the doctrines of equity, save in so far as other provision has been or shall be made by any law made or becoming applicable under the Constitution or any law saved under paragraph (b) above in so far as they are not inconsistent with, or contrary to, the Constitution;

(d)   The Acts of Parliament of the United Kingdom of Great Britain and Northern Ireland which were applicable to Cyprus immediately before Independence Day (i.e. 16 August 1960), save in so far as other provision has been or shall be made by any law made or

13

becoming applicable under the Constitution and in so far as they are not inconsistent with, or contrary to, the Constitution.

24.    **Private Law**:

The Republic of Cyprus is, essentially, a Common Law jurisdiction and, though quite a few areas of substantive law have been codified or have been set out in unified legislative enactments, still the Courts of Cyprus apply common law principles as well as principles of equity (as the terms are understood in the United Kingdom and as these principles are developed by English and Commonwealth judicial authorities and precedents), except where there is specific legislation on the matter in issue or where different case law has been developed on the point by the Courts of the Republic of Cyprus.  The doctrine of precedent, as used in the United Kingdom and in English jurisprudence, applies.

(a)    **Common Law – Contract and Tort:**

The Law of Cyprus on the subject of contracts is set out in the Contract Law, Cap.149 (of the Republic of Cyprus) and on the subject of civil wrongs (torts) in the Civil Wrongs Law, Cap.148 (of the Republic of Cyprus).   These enactments are essentially a codification of the Common Law.  It is noteworthy that section 2(1) of both Laws provides as follows:  "This Law shall be interpreted in accordance with the principles of legal interpretation obtaining in England, and

14

expressions used in it shall be presumed, so far as is consistent with their context, and except as may be otherwise expressly provided, to be used with the meaning attaching to them in English law and shall be construed in accordance therewith".

Although the judgments of English Courts on matters of contract and civil wrongs (torts) after the Independence of the Republic of Cyprus are not binding on the Courts of the Republic, they are regarded as persuasive authority and are generally cited and followed in the judgments of Cypriot Courts, including those of the Supreme Court of Cyprus.

(b)    **Equity – Law of Trusts:**

A trust is the creature of equity.  The rules of English Law relating to trusts, being part of the doctrines of equity, are part of Cyprus Law by virtue of section 29 of the Courts of Justice Law of 1960 (Law 14/60, as amended).  The Courts of Cyprus apply principles of equity, unless it is otherwise expressly provided by statute.  Amongst the doctrines and equitable remedial devices that Cyprus Courts apply is the constructive trust (as I explain in greater detail below).

15

25.    **Practice and Procedure**:

The Courts of the Republic of Cyprus follow rules of practice and procedure adopted for the specific type of court.  District Courts follow the Civil Procedure Rules of Cyprus (Chapter 12 - Subsidiary Legislation), as modified from time to time.

I wish to add that the Civil Procedure Rules were introduced during the Colonial Administration (1938).  They were, in substance, almost identical with the English Rules of Court and were in the English language.   These same rules continue to be in force now with only very minor amendments.  They have not been translated in any of the official languages of the Republic of Cyprus and thus continue to be in force in English.

It is important to point out that rights to a fair trial are enshrined in and are protected by the Constitution of the Republic of Cyprus as well as by the European Convention referred to hereinabove.

26.    Proceedings before Cyprus Courts must be conducted in one of the official languages of the Republic, namely Greek or Turkish.  Though English is widely used in Cyprus, it is not one of the official languages of the Republic and therefore judicial proceedings *cannot be conducted in the said language.*  But this does not mean that documents in English cannot be produced before or

16

accepted by a Court in Cyprus, since, by virtue of Law 154/90, documents, including affidavits, in a foreign language, are admissible as evidence, though if a party's attorney requests it, a document or any part thereof should be translated into one of the official languages of the Republic. In practice, documents in the English language are routinely put before the Courts of Cyprus and accepted as evidence.

27.    As regards oral testimony, in Cyprus there are highly competent translators who translate from English into Greek and the reverse. Every day, trials are conducted before Cyprus Courts between foreign litigants or a foreign and a local litigant, with the said persons speaking and testifying in English, using the services of an instantaneous translator.

28.    **Procedure and Evidence**:

As already stated, procedures before Cyprus courts are very similar to those that were in use in England before 1960. There are procedures for discovery, particulars and interim relief (such as freezing and interlocutory orders). Witnesses in Cyprus can be compelled to attend court and testify. Witnesses who refuse to attend court and testify, if so directed, will be punished by the court for contempt. Once called as a witness, a person is compelled to testify and can refuse to do so only on very exceptional grounds of privilege, such as legal privilege or the privilege against self-incrimination.

17

29.    Cyprus courts have numerous devices for compelling the attendance of unwilling witnesses.  Broadly speaking, the Cyprus Law of Evidence (which in itself is based on the common law, though it has been set out in a number of legislative enactments) recognizes the distinction between competent and compellable witnesses.   Any person, within the Republic, who is summoned to give evidence or to produce a document in his possession or power, has to attend the Court at the specified time and place. If he fails and does not excuse his failure to the satisfaction of the Court, a warrant may compel his attendance and he shall also be liable to imprisonment or to a fine or to both (sections 48 and 49 of the Courts of Justice Law of 1960 (Law 14/60, as amended).

III.    **The Bank is Amenable to Being Sued by the Trustees in Cyprus**

30. The Bank is registered, incorporated and established in the Republic of Cyprus, where it has its principal base of operations.  As a result, the Bank is subject to the jurisdiction of the Courts of the Republic of Cyprus and regularly brings proceedings – and is sued – before the Courts of the Republic.

31.  In fact, as I noted above, the Trustees have already brought a legal action against the Bank of Cyprus in Cyprus.

18

32. Having considered carefully the Amended Complaint, it is my opinion that the Trustees could litigate the subject matter of the dispute described in the Amended Complaint before the Cyprus Courts.

33. Another matter which I consider important is the following:  Under Cyprus Law, a defendant can institute third party proceedings for an indemnity and/or contribution against a person he alleges is truly responsible for the loss and/or damage which have been sustained by the plaintiffs.  Thus, in the event that the claims set out in the Amended Complaint are pursued in Cyprus, the Bank (as the defendant) would be able to bring third party proceedings for an indemnity against Lycourgos Kyprianou and his associates who allegedly were central to the fraud (on the ground that it was the conduct of Lycourgos Kyprianou and his associates which really caused and/or substantially contributed to the alleged losses of plaintiffs). Such proceedings would be heard at the same time and in the context of the same action, in the interests of finality and expeditiousness. Such third party proceedings are common place in Cyprus and are in the interests of all concerned.

IV.    **The Taking Of Evidence In Cyprus For Purposes Of Litigation Abroad**

34.    Cyprus is a party to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention").  Therefore, as I understand it, a United States court or a party to United States legal proceedings

19

who seeks judicial assistance to obtain evidence from a Cyprus citizen or business, which is not a party to the United States lawsuit, must apply to the Cyprus courts, through the appropriate authorities, in accordance with the terms of the Hague Convention. The whole process can be time-consuming. This is because the letter of request would be sent by a United States Court to the Cyprus Central Authority, the Ministry of Justice, which in turn would transmit it to the Supreme Court. The Supreme Court would then assign the matter to a particular District Court Judge, who would in turn issue a summons to the witness from whom evidence is sought.

35. Examination of parties or other witnesses on the request of a United States court pursuant to the Hague Convention is conducted by a Cyprus judge in a manner consistent with the procedural rules applicable in Cyprus litigation. A written list of questions to be put forth to the witness is transmitted, through the designated channels, to the Cypriot judge, who conducts the examination on the basis of the written questions. The hearing must be conducted in Greek, with an interpreter being present. The parties to the United States litigation and their counsel may attend the examination and may submit limited follow up questions through the judge. Counsel do not perform direct or cross examinations of the witness. As a general matter, no contemporaneous transcript of the proceedings is prepared. The judge will invariably prepare a summary of the examination.

36.  To the extent documents are sought pursuant to the Hague Convention, a Cyprus Court will follow English courts and will allow production of only limited and narrowly identified categories of documents.

## V.    The Bases for Civil Liability Under Cyprus Law

37.  The subject matter of the Amended Complaint can be litigated before the Courts of Cyprus, in the sense that the relief sought in the said Amended Complaint can be pursued before the Courts of Cyprus, on the basis of the same general allegations of purported wrongdoing.  Cyprus recognizes claims for breach of contract and for various torts, including negligence, and constructive trust.  Cyprus courts have the authority to award monetary damages as well as injunctive and other relief.

### Count I of the Complaint

38.  I note that Count I of the Complaint asserts a claim of "Aiding and Abetting Breach of Fiduciary Duty".  In my opinion, no such independent claim would be recognized under Cyprus law.

39.  While Cyprus recognizes the concept of "fiduciary duty" and the notion of "aiding and abetting", it does not recognize an independent civil claim of "aiding and abetting the breach of a fiduciary duty".  Rather, the notion of "aiding and

21

abetting" is a concept of criminal law and not of civil law (as an independent

basis of the liability).

40.  Thus, even if there were an underlying breach of fiduciary duty under U.S.

law by Lycourgos Kyprianou, as I have been informed is alleged in paragraph 98

of the Amended Complaint, Cyprus law would not recognize a cause of action

asserting that another party "aided and abetted" that breach.

**Count II of the Complaint**

41.  A "constructive trust" is recognised under the Law of Cyprus, on the basis of

equitable principles used in England.  Broadly speaking, a constructive trust is a

trust which is imposed by equity in order to satisfy the demands of justice and

good conscience, without reference to any express or presumed intention of the

parties.  When property has been acquired in such circumstances that the holder

of the legal title may not in good conscience retain the beneficial interest, equity

may convert him into a trustee.  Similar principles may apply in a case of unjust

enrichment.  The essence is the extension of a fiduciary relationship to other

persons, who have dealt with trust property or with property beneficially

belonging to others in a contumelious or reckless fashion.  Thus, if a person has

received trust property with actual or constructive notice that it was trust property

and that the transfer was a breach of trust, or if a person has been unjustly

enriched at the expense of another, then he may become and be regarded as a constructive trustee of the relevant res or property.

42. Thus, Cyprus law recognizes the concept of a "constructive trust" and therefore the Trustees could, in principle, bring proceedings in respect thereof under Cyprus Law, provided of course that the elements for the creation and recognition of a constructive trust are satisfied.

43.    In my opinion, a constructive trust, being a creature of equity, would not be imposed by a Cyprus Court where there was an adequate remedy at law.

## Counts III and IV of the Complaint

44. The Contract Law of Cyprus is based on the common law and principles of equity. Similarly, remedies for breach of contract are very similar to those available to common law courts in England and in the United States. Usually, contracts must be performed in accordance with their terms. The elements of a claim for breach of contract under Cyprus law are: the establishment of an agreement on the basis of consensus (by means of offer and acceptance between the parties), breach by one party of the express or implied provisions of the contract and the occurrence of loss or damage (which the innocent party may recover on the basis of principles of recoverability, which in turn are based on the

23

common law of England, though in Cyprus they form part of the Contract Law of the Republic of Cyprus, Cap.149).

45. Thus Cyprus law recognizes claims for breach of contract and the Trustees could, in principle, assert such a claim against the Bank of Cyprus before a Cyprus Court.

46. I should note, however, that the Amended Complaint alleges that the Bank of Cyprus has breached a purported term of its contract with its depositors identified as "the implied duty of good faith and fair dealing" (Amended Complaint, paragraph 110). Cyprus does not, as a matter of law, recognize such an implied term in a contract. In addition, Cyprus does not recognize a cause of action based on a breach of an implied duty of good faith and fair dealing, such as that asserted in Count IV of the Complaint.

**Count V of the Complaint**

47. The elements of a claim in negligence, as pursued before Cyprus Courts, are basically the same as those applicable in England and other common law jurisdictions. Thus, the three elements of a claim in negligence are, first the duty to exercise reasonable care and exhibit proper diligence towards the complainant (in all the circumstances of the case) secondly a breach of this duty, and third the

24

materialisation of foreseeable loss and proximate damage in consequence of the particular breach of duty.

48.  Thus Cyprus law recognizes claims for negligence and the Trustees could, in principle, assert such a claim against the Bank of Cyprus before a Cyprus Court. To the extent that it is alleged in the Amended Complaint that the Bank owed a duty of care to shareholders of AremisSoft, I would like to point out that under the Law of Cyprus, while the Bank may owe a duty of care to a depositor, it does not owe a duty of care to a shareholder of a depositor. I wish to add that under the Law of Cyprus there is a strict separation between a Company or Corporation, on the one hand, and its shareholders or its investors, on the other. If a duty of care is owed to the Company or Corporation by virtue of a legal relationship with it, then such duty is not owed to the Shareholders or Investors thereof.

49.  In accordance with what I say above concerning the general applicability of the common law and equity in Cyprus (subject to any contrary legislative enactment), there are various general principles that a Cyprus Court might apply in the circumstances of a particular case. One such example, already mentioned above, is that equity does not provide a remedy where one may be found by application of common law rules and principles. Another is that one must come to equity with clean hands, and not in an effort to obtain an unfair advantage from resorting to equity. Also, courts should not mediate disputes between wrongdoers and should deny relief to a wrongdoer. Yet another related principle

25

is the doctrine of "in pari delicto", namely that a court will consider whether the plaintiff can make out his case otherwise than through the medium and by the aid of the illegal transaction to which he was himself (factually or legally) a party.  If a plaintiff cannot do so then he will be denied a remedy.

## VI.    Conclusion

50.  Therefore, in terms of the matters set out in the Amended Complaint, it is my considered view that the Courts of the Republic of Cyprus would basically apply principles of common law and equity (subject always to what I state above regarding their applicability in Cyprus) in order to determine whether the Trustees are entitled to the relief they seek in the Amended Complaint.

51.  It is also my considered view that if the claims set out in the Amended Complaint are brought against the Bank before the Nicosia District Court, the said Court would accept jurisdiction and defendants (the Bank) would not be able either to contest jurisdiction or claim that the Cyprus forum is not convenient. The Nicosia District Court, as already stated, would entertain the claims and complaints of plaintiffs, would deal with them on the basis of principles of common law and equity applicable in Cyprus, and would be able to award traditional common law and equitable remedies, such as damages and injunctive relief, if appropriate.

**VII.**   **The Regulation of Banks under Cyprus Law**

52.  I note that in the Amended Complaint the Trustees make various assertions about "applicable laws" imposing duties and obligations on banks in Cyprus including, inter alia,  , the submission of reports to regulatory authorities, the reporting of suspicious transactions and the like.  (Amended Complaint paragraphs 30-31.)  In my opinion, as a matter of public/regulatory law,  the principal "applicable law" regulating the Bank of Cyprus is that of the Republic of Cyprus.

53.  Banks in Cyprus are closely regulated by a number of institutions and authorities.  Principally, banks in Cyprus (including of course the Bank of Cyprus) are supervised by the Central Bank of Cyprus, which itself operates as a supervising bank authority in the European Union (to which Cyprus acceded on 1.5.2004).  Also, as a public company, the Bank is regulated and supervised by the Cyprus Securities Commission and by the Registrar of Companies.  Of course, in case of alleged wrongdoing, the Bank may be investigated by the prosecutorial authorities of the Republic, principally the Office of the Attorney-General of the Republic.

54.  Proper and exacting bank supervision is regarded in Cyprus as a matter of major public concern.  There is a substantial body of legislation concerning the regulation of banks, including the Central Bank Law, the Law for the Prevention

27

and Suppression of Money Laundering Activities, the Banking Law, etc.  In

particular, the Banking Law 1997 is of major significance, regulating every aspect

of banking operations.  Furthermore, I would like to point out that Cyprus banks,

in view of Cyprus' accession to the European Union, are also within the ambit of

relevant European directives and guidelines, as adopted by the European

Central Bank and similar European Institutions.


        I declare under penalty of perjury that the foregoing is true and

correct.

Executed on this 22nd day of November 2006

at Nicosia, Cyprus


**Demetrios (Demetrakis) Stylianides**
**Former President of the Supreme**
**Court of Cyprus**


28