UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

           Plaintiff,

-against-

BANK OF CYPRUS
PUBLIC COMPANY LIMITED,

           Defendant.

Index No.: 07 CIV 9234 (CSH)

**DECLARATION OF STEPHEN GEORGE BYRNE**

London, England

    Stephen George Byrne, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am the Head of Legal & Compliance of Bank of Cyprus UK, a United Kingdom-based branch of Bank of Cyprus Public Company Limited (the "Bank). I have been employed by the Bank of Cyprus UK for almost 7 years. I am a citizen of the United Kingdom and reside in Hertfordshire, England.

2. I am over the age of 18 and not a party to this action. I make this Declaration based on my personal knowledge and review of the Bank's files and records, in support of the Bank's Motion to Dismiss the Complaint.

3. In connection with the preparation of this Declaration, I have reviewed the Complaint filed by the United States government against the Bank on October 17, 2007, and the Amended Complaint filed by the co-Trustees of the AremisSoft Liquidating Trust against the Bank on September 25, 2006.

<u>The Bank of Cyprus UK Was a Separate Entity From The Bank Until November 2004.</u>

4. From 1960-2004, the Bank of Cyprus UK was a separate entity from the Bank. Specifically, the Bank of Cyprus UK was a wholly-owned subsidiary of the Bank, operating

under the name Bank of Cyprus (London) Limited, a company incorporated in England and Wales.

5. On 1 November 2004, the United Kingdom operations transacted by the Bank of Cyprus (London) Limited were transferred to the Bank itself, pursuant to an order of the High Court of England & Wales made under Part 7 of the Financial Services and Markets Act 2000 of the United Kingdom. From that date through the present, the Bank of Cyprus UK has operated in the United Kingdom as a branch of the Bank on the basis of a European Economic Area "passport" issued pursuant to the European Banking Consolidation Directive (which is designed to promote free movement of services or establishment within the European Union.)

The Witnesses and Documents Are In The United Kingdom

6. All of the accounts identified in transactions 36-37 and 100-107 of the chart contained in paragraph 41 of the Complaint (the "Accounts") were opened and administered in London, when the United Kingdom operations were conducted by the Bank of Cyprus (London) Limited. In the remainder of this Declaration I will refer to Bank of Cyprus UK, regardless of whether this relates to the Branch post 1 November 2004 or to the separately incorporated Bank of Cyprus (London) Limited before that date. Documents relating to the Accounts were maintained in London. None were maintained in the United States.

7. All the Bank of Cyprus UK's former or current employees whom we have been able to identify at this time as possible witnesses with responsibility over and/or who had knowledge of and/or involvement with the Accounts, are residents of the United Kingdom. These potential witnesses include the following current and former employees identified in paragraphs 82-94 of the Complaint: (i) Maro Georgiou; (ii) Soteris Antoniades; (iii) Christopher

Davies; (iv) members of the various operational departments of the Bank of Cyprus UK; and (v) myself.

8.  The New York representative office of the Bank had nothing to do with the administration of the Accounts at issue in the Complaint.

The NCIS Reports

9.  Attached hereto as Exhibit A is a true and correct copy of the letter dated 10 October 2001 that was sent by the Bank of Cyprus UK to the United Kingdom National Criminal Intelligence Service ("NCIS"), referred to in paragraphs 90 & 92 of the Complaint.

10. Attached hereto as Exhibit B is a true and correct copy of the letter dated 2 July 2002 that was sent by the Bank of Cyprus UK to NCIS, referred to in paragraph 92 of the Complaint.

The Discovery Produced By The Bank of Cyprus UK To The Trustees

11. The Bank of Cyprus UK produced voluminous documents to the Trustees in 2005 pursuant to orders of the High Court in London. With respect to the main production order, dated 28 October 2005, the Trustees undertook that the documents produced by the Bank of Cyprus UK "will be used solely for the purpose of following an tracing the proceeds of the First Respondent's [Kyprianou] fraud, and not for any other purpose."

12. On 3 November 2005, the High Court, upon request from the Trustees amended the undertaking such that the documents produced could be "used solely for the purpose of following and tracing proceeds of the First Respondent's [Kyprianou] fraud and existing proceedings between the Applicants [the Trustees] and the First Respondent [Kyprianou] and others in Cyprus and any related proceedings in Cyprus."

13. After the Bank of Cyprus UK made its production the Trustees sought and received approval for a further amendment of the undertaking. Under the amended undertaking the documents produced could be used "for the purpose of [] proceedings anywhere in the world for the losses suffered by the Applicants [the Trustees] and those that they represent (whether those are against the First and/or Twelfth Respondents [Herminone Kyprianou] or against any other persons implicated in the fraud."

14. The documents produced by the Bank of Cyprus UK to the Trustees are referred to and quoted in the Complaint at paragraphs 84-88, 90, 92 and 94. These documents were also quoted in paragraphs 78, 81, 84, 86-88 and 92 of the Amended Complaint in the matter of *LaSala v. Bank of Cyprus Public Company Ltd.*, No. 06 Civ. 6673 (S.D.N.Y.) (CSH).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 22nd day of January 2008
at London, England

_____
Stephen Byrne