# **<u>EXHIBIT C</u>**

Federal Reserve Release

# Press Release



*Release Date: November 24, 1997*

For immediate release

The Federal Reserve Board announced today its approval of the application of Bank of Cyprus, Ltd., Nicosia, Cyprus, to establish a representative office in New York, New York.

Attached is the Board's Order relating to this action.

---

**Bank of Cyprus, Ltd.**
**Nicosia, Cyprus**

**Order Approving Establishment of a Representative Office**

Bank of Cyprus, Ltd. ("Bank"), Nicosia, Cyprus, a foreign bank within the meaning of the International Banking Act ("IBA"), has applied under section 10(a) of the IBA (12 U.S.C. § 3107(a)) to establish a representative office in New York, New York. The Foreign Bank Supervision Enhancement Act of 1991, which amended the IBA, provides that a foreign bank must obtain the approval of the Board to establish a representative office in the United States.

Notice of the application affording interested persons an opportunity to submit comments has been published in a newspaper of general circulation in New York, New York (*The New York Times*, January 6, 1993). The time for filing comments has expired, and the Board has considered the application and all comments received.

Bank, with $6.3 billion in consolidated assets,[1] is a commercial bank chartered in Cyprus. Bank is wholly owned by a holding company, Bank of Cyprus (Holdings) Ltd. ("Holdings"), Nicosia, Cyprus.[2]

Bank is chiefly engaged in the provision of banking and other financial services to retail, corporate and governmental clients, including the provision of deposit accounts, short- and long-term financing, trustee and credit card services, and facilities for international transactions.

Bank operates more than 200 branches in Cyprus, ten branches in Greece, three representative offices in Australia, a representative office in South Africa, and a representative office in Canada.[3] Bank does not engage, directly or indirectly, in any activities in the United States. The proposed representative office would engage in traditional representational functions, including serving as a liaison between customers and Bank's offices in Cyprus, promoting Bank's name, products, and services to potential customers, and advising on economic conditions and investment opportunities in Cyprus.

In acting on an application to establish a representative office, the IBA and Regulation K provide that the Board shall take into account whether the foreign bank engages directly in the business of banking outside of the United States, has furnished to the Board the information it needs to assess adequately the application, is subject to comprehensive supervision or regulation on a consolidated basis by its home country supervisor, and has provided adequate assurances of access to information on the operations of the bank and its affiliates to determine compliance with U.S. laws. (12 U.S.C. § 3107(a); 12 C.F.R. 211.24 (d)). The Board may also take into account additional standards as set forth in the IBA (12 U.S.C. § 3105(d)(3),(4)) and Regulation K (12 C.F.R. 211.24(c)).

The Board previously has stated that the standards that apply to the establishment of a branch or agency need not in every case apply to the establishment of a representative office, because representative offices do not engage in a banking business and cannot take deposits or make loans.[4] In evaluating an application to establish a representative office under the IBA and Regulation K, the Board will take into account the standards that apply to the establishment of branches and agencies, subject generally to the following considerations. With respect to supervision by home country authorities, a foreign bank that proposes to establish a representative office should be subject to a significant degree of supervision by its home country supervisor.[5] A foreign bank's financial and managerial resources will be reviewed to determine whether its financial condition and performance demonstrate that it is capable of complying with applicable laws and has an operating record that would be consistent with the establishment of a representative office in the United States. Finally, all foreign banks, whether operating through branches, agencies or representative offices, will be required to provide adequate assurances of access to information on the operations of the bank and its affiliates necessary to determine compliance with U.S. laws.

With respect to home country supervision of Bank, the Board has considered the following information. The Central Bank of Cyprus (the "Central Bank") is the supervisory authority for all banks licensed in Cyprus, including Bank. The Board has previously determined, in connection with an application involving another bank from Cyprus, that such bank was subject to a significant degree of supervision by the Central Bank.[6] The Board has determined that Bank is supervised by the Central Bank on substantially the same terms and conditions as the bank previously considered by the Board. Based on all the facts of record, the Board concludes that factors relating to the supervision of Bank by its home country supervisor are consistent with approval of the proposed representative office.

The Board also has determined that, for purposes of the IBA and Regulation K, Bank engages directly in the business of banking outside of the United States through its operations in Cyprus. Bank has provided the Board with the information necessary to assess the application through submissions that address relevant issues.

The Board also has taken into account the additional standards set forth in section 7 of the IBA and Regulation K (*see* 12 U.S.C. § 3105(d)(3),(4); 12 C.F.R. 211.24(c)(2)). As noted above, the Central Bank does not object to Bank's establishing the proposed representative office.

The Board also has determined that financial and managerial factors are consistent with approval of the proposed representative office. Bank appears to have the experience and capacity to support the proposed office and also has established controls and procedures for the proposed representative office to ensure compliance with U.S. law.

Finally, with respect to access to information about Bank's operations, the Board has reviewed the applicable provisions of law in relevant jurisdictions and has communicated with appropriate government authorities regarding access to information. Bank and Holdings each have committed to make available to the Board such information on the operations of Bank and any of its affiliates that the Board deems necessary to determine and enforce compliance with the IBA, the Bank Holding Company Act of 1956, as amended, and other applicable Federal law. To the extent that the provision of such information to the Board may be prohibited or impeded by law, Bank and Holdings have committed to cooperate with the Board to obtain any necessary consents or waivers that might be required from third parties in connection with disclosure of certain information. In light of these commitments and other facts of record, and subject to the condition described below, the Board concludes that Bank has provided adequate assurances of access to any necessary information the Board may request.

On the basis of all the facts of record, and subject to the commitments made by Bank, and the terms and conditions set forth in this order, the Board has determined that Bank's application to establish a representative office should be, and hereby is, approved. Should any restrictions on access to information on the operations or activities of Bank and any of its affiliates subsequently interfere with the Board's ability to determine the compliance by Bank or its affiliates with applicable Federal statutes, the Board may require termination of any of Bank's direct or indirect activities in the United States. Approval of this application also is specifically conditioned on compliance by Bank with the commitments made in connection with this application, and with the conditions in this order.[7] The commitments and conditions referred to above are conditions imposed in writing by the Board in connection with its decision, and may be enforced in proceedings under 12 U.S.C. § 1818 against Bank and its affiliates.

By order of the Board of Governors,[8] effective November 24, 1997.

(signed) Jennifer J. Johnson

Jennifer J. Johnson
Deputy Secretary of the Board

---

**Footnotes**

[1] Data are as of December 31, 1996.

[2] No single shareholder owns more than 5 percent of the shares of Holdings.

[3] Bank also has three bank subsidiaries: the Bank of Cyprus (London), Ltd., London, England; the Mortgage Bank of Cyprus, Ltd., Nicosia, Cyprus; and the Bank of Cyprus (Channel Islands) Ltd., Guernsey, Channel Islands. Two other subsidiaries of Bank provide factoring services in Cyprus and Greece, and another subsidiary specializes in the management of mutual funds. Holdings also controls six subsidiaries, other than through Bank, which engage in finance, insurance, investment banking, real estate development and management, and hotel operations activities.

[4] See 58 *Federal Register* 6348, 6351 (1993).

[5] See *Citizens National Bank*, 79 Federal Reserve Bulletin 805 (1993).

6 *See The Cyprus Popular Bank,* 83 Federal Reserve Bulletin (forthcoming December 1997) (order dated October 27, 1997).

7 The Board's authority to approve the establishment of the proposed representative office parallels the continuing authority of the State of New York to license offices of a foreign bank. The Board's approval of this application does not supplant the authority of the State of New York and its agent, the New York State Banking Department, to license the proposed representative office of Bank in accordance with any terms or conditions that the New York State Banking Department may impose.

8 Voting for this action: Chairman Greenspan, Vice Chair Rivlin, and Governors Kelley, Phillips, Meyer, Ferguson, and Gramlich.

Return to top

1997 Orders on banking applications

Home | News and events
Accessibility
**Last update: November 25, 1997, 10:00 AM**